# FIRST NATIONAL BANK OF MINNEAPOLIS v. B. Y. McNAIRY.[1]

June 20, 1913.

Nos. 18,187—(132).

**Sale — breach of warranty — action on promissory note — burden of proof.**

1. In this action against the defendant on his promissory note, discounted by the plaintiff bank before maturity, and placed to the deposit account of the payee, a customer of the bank, the evidence disclosed no defense to the note, except such as arose from an alleged breach of warranty in the sale of an automobile, the note being given as part payment therefor. *Held* that the burden was upon the defendant to prove that the plaintiff was not a bona fide holder.

**Indorsement of note — omission of word in payee's name.**

2. The note was executed and delivered to Northland Motor Car Company but the word "Car" was omitted from the name of the payee. In discounting the note, the true name of the payee was indorsed. It is *held* that the variance or omission is not fatal to a valid indorsement under the law merchant.

**Discount of customer's paper — purchaser for value — checking out amount credited.**

3. A bank which upon discounting its customer's negotiable paper places the amount to the credit of the customer's deposit or checking account does not become a purchaser for value until the credit so given is exhausted by payment of checks drawn against such account. In determining whether such credit has been exhausted, the rule is to be applied that as checks are paid the amount is to be charged against the oldest item of deposit or credit of the customer.

**Evidence.**

4. Under this rule, the whole amount for which credit was given upon

---

[1] Reported in 142 N. W. 139.

the discount of the note was paid out the day after its discount before any notice of any defense thereto and before it became due.

**Directed verdict.**

5. Upon the evidence, the plaintiff was entitled to a directed verdict.

Action in the district court for Morrison county to recover $300 upon a promissory note sold and indorsed to plaintiff before maturity. The facts are stated in the opinion. The case was tried before Nye, J., who, when plaintiff rested, denied defendant's motion to dismiss the action and his motion to direct a verdict in favor of defendant, and at the close of the testimony denied a motion of each party for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed and judgment ordered in favor of plaintiff notwithstanding the verdict.

*A. H. Vernon,* for appellant.

*D. M. Cameron,* for respondent.

HOLT, J.

Appeal by plaintiff from an order denying its blended motion for judgment notwithstanding the verdict or a new trial.

On June 13, 1911, the Northland Motor Car Company sold an automobile for $1,400 to the defendant and such sale, he claims, was made upon certain representations and warranties. The defendant paid $1,000 at the time and gave his two promissory notes for the balance of the purchase price, one for $100 due in 20 days and one for $300 due in 90 days. The first was paid when due, the second is the note involved in this suit. The plaintiff claims that in the ordinary course of business, for value and in good faith, it purchased the note before maturity. This the defendant puts in issue, and, while admitting the execution of the note, sets up as a defense thereto that the representations and warranties of the Northland Motor Car Company, inducing the defendant to buy the automobile, were fraudulent and untrue, and because thereof alleges damages in a sum exceeding the amount of the note sued on. It appeared at the trial that

the Northland Motor Car Company was a customer of the plaintiff, that it kept a checking account with it and was indebted to it in a large sum for money borrowed. The evidence also shows that on September 6, 1911, plaintiff discounted the note at the request of the Northland Motor Car Company for $299.70, placing that amount to the credit of the company's checking account in the bank. At the close of business on September 5, the company's credit balance on its checking account was $295.08, on the sixth, $1,536.98, on the seventh $209.63, but thereafter it was never less than $540. On the sixth of September the company deposited with the bank $1,241.90 (this included the note in suit and other notes then discounted by the plaintiff) and on the seventh of September $1,000. So that, if the rule be applied that as checks are paid by the bank, the payment should be charged against the oldest deposit item, then the whole of the amount deposited on the sixth together with $790.37 out of the $1,000 deposited on the seventh was paid out before the close of that day's business.

The first eight errors assigned relate to the contention that the evidence fails to show that the plaintiff was not a bona fide holder of the note, therefore, the defense asserted is not available. The ninth challenges part of the charge. Each party moved for a directed verdict when the testimony was in.

The evidence entirely fails to show such fraud in the transaction leading up to the execution of the note that the onus of proving good faith devolved on the plaintiff. The only defense attempted to be proved was an offset to the note arising from the breach of an alleged warranty in the sale of the automobile. When the plaintiff produced the note, indorsed by the payee, the presumption obtained that the note was taken in good faith, for value, before maturity, in due course of business and without notice of any defenses thereto. First Nat. Bank v. Person, 101 Minn. 30, 111 N. W. 730; 1 Dunnell, Minn. Dig. § 1040, and cases there cited. The court therefore rightly laid the burden on the defendant to prove the plaintiff not a good faith purchaser. We are of opinion that he signally failed in this in so far as the evidence shows that the funds credited to the deposit account of the Northland Motor Car Company upon the discount of

this note were actually paid out before maturity or notice of any defense thereto.

The payee of this note, Northland Motor Car Company, was a going concern engaged in legitimate business. A business in which it is commonly known that negotiable instruments are taken. The company was a customer of the plaintiff bank, and the evidence discloses that it did business with it to a considerable extent. It had a line of credit, and also kept a deposit account of some size subject to checking. There can be nothing suspicious in the fact that when the note was discounted, the proceeds were placed to the credit of the indorser's checking account instead of then paying cash for the note. Indeed, it may be said that when a bank discounts its customer's paper, the usual and ordinary method is to proceed exactly as was done in this case.

There are only two matters urged by the defendant as evidence tending to give notice which require mention. The first is that some sort of notice was conveyed to the plaintiff in a letter which the defendant claims to have written it, explaining why he had sent the check to pay the $100 note direct to the company instead of to plaintiff, when he had been informed that the plaintiff held it for collection. The letter was not produced at the trial, but according to the defendant's testimony, it merely stated that the agreement with the payee of the note was that it should not be circulated. This is somewhat inconsistent with his letter, three days before the note became due, to the Northland Motor Car Company, wherein he inquires of the company who holds that note as he wants to make prompt payment. We do not consider this letter, if received by the plaintiff at the time, contained any information which might tend to place it on guard against discounting the $300 note. The defendant does not pretend to have mentioned this note, discounted over two months thereafter.

The other circumstance urged is that the discrepancy or omission in the name of the payee is fatal to an indorsement made under the true name, so that it cannot be said to be a valid indorsement as understood in the law relating to negotiable instruments. The note was made payable to the order of "Northland Motor Co." but was in-

dorsed, "Northland Motor Car Co." The word "Car" is left out in the name of the payee. The answer admitted the execution and delivery of the note to the Northland Motor Car Company. Undoubtedly the indorsement and delivery of the note to the plaintiff passed title to it. But even so, in order to protect the holder against the equities of the maker, it must have been acquired in due course of business. That means more than an acquisition by assignment or by other means of transfer of title, short of an indorsement under the law merchant. An essential prerequisite to being a bona fide holder of a negotiable instrument is a valid indorsement, DeKalb Nat. Bank v. Thompson, 79 Minn. 151, 81 N. W. 765; Cochran v. Stein, 118 Minn. 323, 136 N. W. 1037, 41 L.R.A.(N.S.) 391; 1 Dunnell, Minn. Dig. § 951. We however do not believe the omission of the word "Car" in the name of the payee in the note destroys the validity of the indorsement made under its true name. It is well known that corporations or trading concerns have names more or less descriptive of the business and composed of several words. Frequently, in every-day business use, the name is contracted and a word left out. It can hardly be said that an omission of the word "Car" under the circumstances disclosed in this case, is unusual or out of the ordinary so as to deprive plaintiff of being a bona fide holder. Thompson, Corporations, § 54, says: "As the names of corporations almost invariably consist of more than one, and often of several words, strict accuracy cannot always be expected in the general use of these corporate names. The law very wisely provides for such inaccuracies, and when there are mere omissions or transpositions of some word or words of the corporate name, it regards these as immaterial, the general rule on this subject being that some latitude is allowable in the use of the name of a corporation." The cases cited to support the text do not touch the precise question here involved, but no reason is apparent for a more strict adherence to the corporation's or trading concern's name in the indorsement of commercial paper than obtains in the customary business transactions, so long as the variation is not such as to arouse the suspicions of the ordinary business man. As bearing somewhat on this question may be cited, Newport

v. Starbird, 10 N. H. 123, 34 Am. Dec. 145; Finch v. De Forest, 16. Conn. 445; Cooper v. Bailey, 52 Me. 230.

The note was discounted and the amount placed to the payee's de- posit account. This was not a purchase for value. It merely in- creased the plaintiff's debt to its depositor. Union Nat. Bank v. Winsor, 101 Minn. 470, 112 N. W. 999, 118 Am. St. 641, 11 Ann. Cas. 204. But, if it appears that the plaintiff, before maturity or no- tice of any defense, paid out the whole amount for which credit on the deposit account was given, no offset such as attempted here can be made. This is perhaps stating the law more favorably to defend- ant than is indicated by Security Bank v. Petruschke, 101 Minn. 478, 112 N. W. 1000, 118 Am. St. 644. See also Bank v. McNair, 114 N. C. 335, 19 S. E. 361. The deposit account of Northland Motor Car Company showed as hereinbefore stated, a balance in its favor at close of business on September 5 of $295.08. On the next day this note was discounted with others and the amount credited to the company's account in the sum. of $1,241.90 and at the close of that day's business, there was a balance in favor of the company of $1,- 536.98. On the seventh of September $1,000 was deposited, but on the same day checks drawn against the account had been paid so that the balance at the close of business was only $209.63. It therefore is clear that, if checks as presented are to be considered as paid from the oldest deposits, the checks drawn on the seventh exhausted all the funds or credits in the deposit account made prior to that day and also $790.37 of the $1,000 then deposited. The note did not become due until September 11. We have failed to find any authority sup- porting the proposition that this situation does not make the plaintiff a purchaser for full value before maturity. In Fox v. Bank, 30 Kan. 441, 1 Pac. 789, under similar circumstances Justice Brewer said: "The general rule as to the application of payments, there being no special facts to interfere, is that the first payments go to the oldest· debts." Dreilling v. Bank, 43 Kan. 197, 23 Pac. 94, 19 Am. St. 126, is to the same effect. In Bank v. McNair, supra, it is said: "The well settled rule is 'the first money in is the first money out.'" Bank v. Newell, 71 Wis. 309, 37 N. W. 420, lends support to the inference that the same rule should be applied. After referring to the fact.

that when a company discounted a note and the amount thereof was credited to its then large checking account, such account was thereafter and until notice of the infirmity or maturity continuously increasing so that it was many thousands of dollars greater than when the discount was made, the court says "whether the company checked the money out of the bank during the sixty intervening days between the dates given, does not appear. If it did, the fact could easily have been stated by the officers of the bank in giving the depositions in the case." See also, Board of Commrs. of Redwood County v. Citizens Bank, 67 Minn. 236, 69 N. W. 912, that as between a bank and its depositor "the first item on the credit side to discharge or reduce the first item on the debit side." Morrison v. Bank, 9 Okl. 697, 60 Pac. 273; Fredonia Nat. Bank v. Tommei, 131 Mich. 674, 92 N. W. 348.

Our conclusion is that the evidence conclusively proves the plaintiff took the note in good faith, before maturity, in the usual course of business and paid full value before notice of any defense. The court should therefore have directed a verdict for plaintiff.

The order reversed and the case remanded with direction to enter judgment for plaintiff, notwithstanding the verdict.